**SO ORDERED.**

**SIGNED this 09 day of April, 2010.**



_Dale L. Somers_
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

Opinion designated for print publication and on-line use
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

In re: TORNADO PIZZA, LLC,

                **DEBTOR.**

**CASE NO. 09-24232**
**CHAPTER 11**

**MEMORANDUM OPINION AND ORDER GRANTING**
**DOMINO'S MOTION FOR RELIEF FROM STAY**

Domino's Pizza Franchising, LLC, Domino's Pizza Master Issuer, LLC, and Domino's

Pizza Franchising LLC (hereafter "Domino's") move for relief from stay under 11 U.S.C. §

362(d)(1)[1] to enforce the post-termination provisions of allegedly terminated franchise

agreements with Tornado Pizza, LLC (hereafter "Debtor"). The motion was filed January 29,

2010. Debtor objected, and a non-evidentiary hearing was held on February 19, 2010, after

which the Court took the matter under advisement. Domino's appears by David P. Eron of Eron

Law Office, P.A. and Eric S. Goldstein of Shipman & Goodwin, LLP. Debtor appears by Colin

_____

[1] Future references to title 11 shall be to the section only.

N. Gotham of Evans & Mullinix, P.A. There are no other appearances. This is a core proceeding over which the Court has jurisdiction.

**FINDINGS OF FACT.**

This case is a companion to *Team KC, Inc.*, case no. 9-24233. The managing member of Debtor is the president of Team KC. The business of both Debtors is the ownership and operation of Domino's Pizza stores. As to both Debtors, Domino's seeks relief from stay to enforce the post-termination provisions of franchise agreements with the Debtors that Domino's alleges were terminated prepetition. The facts and legal analysis in both cases are very similar.

The material facts are uncontroverted. On or about October 10, 2005, Debtor and Domino's entered into three identical standard franchise agreements authorizing Debtor for a period of 10 years to operate Domino's Pizza store at three locations in Topeka, Kansas, at the following addresses: 2940 SW Wanamaker Road, Suite 180, Topeka, KS 66614; 735 SW Topeka Blvd., Topeka, KS 66603; and 2835 SE California Ave., Topeka, KS 66605. On November 10, 2008, Debtor and Domino's entered into an identical franchise agreement for a store in Independence, Missouri located at 1208 W. US Highway 24, Independence, MO 64050. The agreements granted the Debtor a limited, non-exclusive license to use Domino's trademarks, service marks, and commercial symbols in connection with its operation of Debtor's Domino's Pizza Stores. The three agreements for the Kansas stores and the agreement for the Missouri store will be collectively referred to as the "Franchise Agreements."

Prepetition Debtor defaulted in making monetary payments due under the Franchise Agreements. Section 6.1 of the agreements requires Debtor to pay certain royalty payments on a weekly basis calculated as a percentage of the weekly sales of each store, and section 13.1

2

required weekly payments calculated in the same manner for payments to the advertising fund. In the year prior to November 23, 2009, Debtor failed to make the royalty and advertisement payments in full for at least 12 out of the 52 weeks. Section 15.2 of the agreements requires Debtor to pay when due any amount owed to Dominos's, its affiliates and subsidiaries, or any other creditor or supplier of its Domino's Pizza stores. In the year prior to November 23, 2009. Debtor failed to pay Domino's, or to affiliates or subsidiaries, for invoices related to electronic orders placed via Domino's website, the use of Domino's PULSE Store Computer System, and the provision of food and supplies.

As a result of these monetary defaults, Domino's sent Debtor notices of default dated December 12, 2008 (four notices, one for each location), February 11, 2009 (four notices, one for each location for defaults after the prior notices), and April 29, 2009 (one notice with an attachment enumerating the four locations for defaults after the prior notices). Each of the[2] notices enumerated in detail the particular default associated with each franchise and advised that Debtor had 10 days to cure the default. Domino's states that "to date, most of the defaults described in the Notices of Monetary Defaults have not been cured."[3] Debtor states it is without information to verify that the defaults have not been cured.[4]

Prepetition Debtor also defaulted with respect to operational and quality control provisions of the Franchise Agreements. Section 15.1 of the Franchise Agreements provides

---

[2] The attachment to the April 29, 2009, notice of default includes an additional store located in Mission, KS. The Franchise Agreement for that store is not the subject of the motions for relief in this case or the Team KC companion case.

[3] Doc. 47, p. 5.

[4] Doc. 68, p. 2.

3

that, among other things, Debtor agrees to fully comply with Domino's specifications, standards, operating procedures, and rules from time to time prescribed for the operation of a Domino's Pizza Store. By notice of default dated May 5, 2009, Domino's informed Debtor that it had failed to comply with the operating requirements as to the store located at 735 SW Topeka Blvd, Topeka, Kansas by not complying with Domino's specifications relating to: (1) Ensuring adequate PRP to handle expected sales volume; (2) ensuring all team members adhere to uniform and grooming standards; (3) properly cleaning and maintaining store interior; and (4) properly cleaning and maintaining all areas in customer view. The notice advised that Debtor had 30 days, until June 7, 2009, to cure the default. By notice dated May 29, 2009, Domino's informed Debtor that it had failed to comply with the operating requirements as to the store located at 2940 S.W. Wanamaker Road, Topeka, Kansas and advised that Debtor had 30 days, until July 1, 2009 to cure the default. These defaults were similar to the defaults at the Topeka Blvd location and were failure to: (1) Properly manage dough; (2) use only approved products and following proper procedures as to those products; (3) ensure adherence to uniform and grooming standards; (4) properly clean and maintain the store interior, oven, and hood; and (5) properly utilize, secure, and maintain the safe. By notice dated August 17, 2009, Debtor was advised of operational defaults as to the Independence, Missouri store and given until September 19, 2009 to cure the defaults. These defaults were similar to those at the other two stores and were failure to: (1) Fully comply with specifications, standards, and operating rules relating to the quality, taste, portion control, and uniformity and manner of preparation and sale of all pizza; (2) properly prepare Oven Baked Sandwiches; (3) ensure compliance with grooming standards; (4) properly clean and maintain store interior, oven, and hood; (6) use approved current signage and

4

ensure signage is clean and in good working order; and (6) ensure front till is locked and contains less than $150.00.

On or about June 2009, Domino's publicized a new standard for the operation of Domino's Pizza Stores, which became effective August 1, 2009, relating to obtaining criminal background checks of employees from an approved vendor. By four notices of default dated November 4, 2009, Domino's informed Debtor that it was in default of Section 15.1 of the Franchise Agreements for failure to comply with the criminal background check for all of its stores. The notices advised Debtor that it had thirty days, until December 7, 2009, to cure the default. The record is silent as to whether these operational defaults were cured.

Pursuant to section 14.2 of the Franchise Agreements the debtor must within 60 days of the end of a store's fiscal year submit to Domino's among other things an unaudited balance sheet as of the end of the year and an unaudited annual statement of profit and loss. By notice of default dated May 15, 2009, Domino's notified Debtor that it was in default of section 14.2(b) as to the three Kansas stores. The notices provided for cure by June 17, 2009. The record is silent whether these defaults were cured.

Section 18.2.1(l) of the Franchise Agreements permits Domino's to immediately terminate the Franchise Agreements, effective upon delivery of a notice of termination, if the Debtor fails on three or more occasions in a twelve month period to comply with one or more provisions of the Franchise Agreements whether or not such violation is corrected after the notice of noncompliance is sent. By letters dated November 20, 2009, Domino's informed Debtor that the three Franchise Agreements for the Topeka stores were terminated under section 18.2.1(l) effective November 23, 2009. Each notice enumerated the above described notices of

5

default which had been sent as to the particular Franchise Agreement in issue, including the three

notices of financial default as to all three locations.  For example the notice of termination for the

Wanamaker Road, Topeka store stated in part:

> This letter shall serve as official notification of termination of the
> Standard Franchise Agreement dated October 10, 2005 between
> Domino's Pizza LLC and Tornado Pizza, LLC ... for the Store ....
> located as 2940 SW Wanamaker, Suite 108, Topeka, KS 66614 ....
> **The termination of the Franchise Agreement is effective**
> **November 23, 2009.**
>
> Pursuant to Section 18 ("TERMINATION AND EXPIRATION")
> of the Franchise Agreement, this termination is based on your
> failure on three(3) or more occasions during any twelve (12)
> month period to comply with any one or more provisions of the
> Franchise Agreement, whether or not such failure to comply is
> corrected after notice is delivered to you.  Specifically, your
> failures to comply with the Franchise Agreement were described in
> our official notifications of default dated December 12, 2008
> (financial), February 11, 2009 (financial), April 29, 2009
> (financial), May 15, 2009 (operational), May 29, 2009
> (operational/quality control) and November 4, 2009 (operational).

The November 20, 2009 notices of termination for the Topeka stores also included an

agreement by Domino's to stay enforcement of the termination of the agreements through

December 23, 2009 for the purpose of allowing Debtor time to sell the store.  They state:

> **However, [Domino's] . . . hereby agrees to stay legal**
> **proceedings to enforce the termination, until December 23,**
> **2009.**  This will afford you the opportunity to sell your Store to a
> purchaser who is acceptable to [Domino's], while also preserving
> the rights of [Domino's] under the Standard Franchise Agreement.
> [Domino's ] agreement to stay enforcement of the termination is
> specifically conditioned on, among other things, its option to
> purchase the assets of the Store being extended by a corresponding
> period of time.  During the stay, the Store must be operated in
> accordance with the terms and conditions of the Franchise
> Agreement and the time within which [Domino's] may exercise its
> option to purchase the assets of the Store will not begin to run.  If
> you fail to comply with the Franchise Agreement, [Domino's]

6

> reserves the right to immediately and unilaterally lift the stay and enforce the termination.

After the notices of termination, Debtor continued to operate the stores and has made post-termination payments to Domino's in excess of $100,000 per month.[5]

Under Missouri law, a franchisor must generally give a franchisee notice of termination of a franchise agreement in writing at least ninety days prior to the effectiveness of such termination.[6] On November 20, 2009, the same date that notices of termination were sent with respect to the Topeka stores, Domino's sent notice of termination under section 18.2.1(l) with respect to the Independence, Missouri store. Like the notices for the Topeka stores, the notice enumerates the reasons for the termination and references the prior notices of default. However it informs the Debtor that the termination is effective February 21, 2010, 90 days after Debtor's expected receipt of the termination notice.

On December 22, 2009, Debtor filed a voluntary petition under Chapter 11. By letter dated December 23, 2009, Domino's agreed to continue the stay of enforcement of the terminations for the Topeka stores through January 23, 2010. To date, Debtor has not sold any of its Domino's Pizza Stores. Debtor continues to operate the stores under the Domino's mark.

On January 29, 2010, Domino's filed for relief from stay for cause under § 362(d)(1). Debtor opposed the motion for relief. A non-evidentiary hearing was held on February 19, 2010. Neither of the parties requested an evidentiary hearing, and the matter was taken under advisement.

---

[5] Doc. 68, p. 5.

[6] Mo. Rev. Stat. § 407.405.

7

**POSITIONS OF THE PARTIES.**

Domino's contends that it is entitled to relief from stay for cause under § 362(d)(1) to enforce the post-termination provisions of the Franchise Agreements. Domino's argues that cause exists because Debtor cannot assume the contracts for two reasons: (1) The Franchise Agreements were terminated before Debtor filed for relief on December 22, 2009; and (2) even assuming the agreements were not terminated prepetition, under § 365(c)(1) and applicable law, Domino's would need to consent to Debtor's assumption of the agreements, and Domino's does not consent. Debtor responds that cause does not exist because: (1) The Franchise Agreements were not terminated prior to Debtor's filing of its bankruptcy petition; (2) Debtor does not need Domino's consent to assume the agreements; and (3) Domino's has breached the agreements.

**ANALYSIS.**

    **A. Relief from Stay.**

Upon the commencement of the case, pursuant 11 U.S.C. § 362(a) there is an automatic stay prohibiting, among other things,

> (1) the commencement of . . . a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
>       * * *
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>       * * *
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

The Code in § 362 (d)(1) provides for relief from stay for cause as follows:

8

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

The determination of whether cause exists depends on the facts of each case.[7]  Section 362(g) imposes the burden of proof as to all matters except the lack of equity in property upon the party opposing relief.  Therefore "if the evidence does not preponderantly favor the estate, or is in equilibrium, the court must find that the debtor or trustee has failed to satisfy the burden of proof . . .."[8]

Of course, if a debtor on the date of filing is a party to a non-terminated franchise agreement, the debtor's rights under that agreement become property of the estate under § 541. Because such agreements are usually found to be executory contracts, they generally may be assumed or rejected by the debtor under § 365.  When, as here, a debtor's business is operated pursuant to a franchise, assumption of the franchise agreement and continued operation of the business pursuant to a Chapter 11 plan is generally an important goal of the franchisee's bankruptcy.  The Court understands the importance of finding that franchise agreements are executory contracts and approving assumption of franchise agreements to accomplish restructuring.  However, when a franchise agreement has been terminated for cause prepetition and the termination process is complete with no right to cure when the petition is filed, the debtor does not have a property interest in the franchise on the date of filing and there is no

---

[7] 2 Norton Bankr. L. & Pac. 3d §43:46 (Thompson/West 2009).

[8] *Id.*, at § 43:54.

9

executory contract to assume, even if on the date of filing the debtor remains in possession of the franchised business and continues to use the franchisor's trademark property.[9]  The bankruptcy filing does not resuscitate the terminated rights.[10]

   Relief from stay is one remedy available to a franchisor when the franchise agreement is not subject to assumption.  For example, in *B-K of Kansas*,[11] the motion of franchisor Burger King for relief from stay was granted for cause, including lack of adequate protection, where the debtor franchisee filed for relief after the termination of the franchise but continued post-petition to operate the Burger King store.  The court found cause for relief in part because "the property in this case, the use of trademarks and service marks, is of such a type that money may never adequately protect the movant.  The movant's reputation to the general public is at stake."[12]

In this case, Domino's asserts that Debtor has no rights in the Franchise Agreements which may be assumed and Domino's is entitled to relief from stay for cause.  According to Domino's, when Debtor filed for relief under Chapter 11 the Franchise Agreements for the Topeka stores had been terminated, there was no right to cure, and Debtor was operating the Domino's Pizza stores solely under Domino's agreement to stay enforcement of the termination until December 23, 2009, for the sole purpose of allowing Debtor the opportunity to find a buyer

---

[9] *Id.* at § 121:3.  *See In re Durability Inc.*, 212 F.3d 551, 557-58 (10th Cir. 2000) (whether life insurance policy was an assumable executory contract turns on the question of whether the contract terminated before bankruptcy was filed).

[10] *See Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984).

[11] *In re B-K of Kansas, Inc.*, 69 B.R. 812 (Bankr. D. Kan. 1987).  *See In re Greenfield Dry Cleaning & Laundry, Inc.*, 249 B.R. 634, 644 (Bankr. E.D. Pa. 2000) (finding that Rite Aid as licensor of premises occupied by Debtor under a terminated license agreement was entitled to relief from stay for cause to pursue the remedy of eviction).

[12] *In re B-K of Kansas, Inc.*, 69 B.R. at 815.

acceptable to Domino's. As to the Missouri store, Domino's contends that after the notice of termination was given on November 20, 2009, there was no right to cure, and the franchise terminated on February 21, 2010.

Domino's seeks relief from stay to enforce the termination provisions of the Franchise Agreements. These duties are stated in section 18.3 of the agreements and include returning the operating manual; cancelling all use of Domino's trademark; notifying third parties, such as telephone companies and the postal service, of the termination; paying all royalty fees and other charges due under the Franchise Agreement; ceasing to identify itself as a Domino's Pizza Store; if the ownership of the store is maintained, making modifications to the interior and exterior to fully eliminate its identification as a Domino's store; and making the store accessible and available to Domino's if it elects to operate the store.

**B. Does cause exist to grant relief from stay?**

At this early stage of a Chapter 11 case, the Court will not grant relief from stay for Domino's to effectuate the termination of the Franchise Agreements if, under the circumstances presented, it would be possible for a confirmed Chapter 11 plan to provide for Debtor's operation of the Domino's Pizza stores or for the estate to benefit from the assignment of such rights to a third party. Before granting the franchisor relief from stay, the Court therefore carefully examines what rights, if any, the estate has in the Franchise Agreements.

**1. The Court finds the Franchise Agreements were properly terminated in accord with their terms by the termination notices dated November 20, 2009.**

Domino's terminated the Franchise Agreements prepetition. The Franchise Agreements in section 18.2.1(l) provide as follows regarding immediate termination upon written notice.:

11

> We shall have the right to terminate this Agreement effective upon delivery of notice of termination to you, if:
>
> * * *
>
> (l) you . . . fail on three (3) or more occasions during any twelve (12) month period to comply with any one or more provisions of this Agreement without limitation, your obligation to submit when due, sales reports or financial statements, to pay when due the royalty fees, advertising contributions or other payments to us or our affiliates or subsidiaries or any other creditors or suppliers of the Store, whether or not such failure to comply is corrected after notice is delivered to you.

The last phrase excludes any right to cure.

Domino's termination was in accord with section 18.2.1(l). As stated in the findings of fact, it is undisputed that Debtor breached sections 6.1 and 13.1 of the Franchise Agreements when it failed to make timely payments to Domino's of royalty and advertising fees on twelve occasions from November 23, 2008 through June 16, 2009. It is undisputed that Domino's gave Debtor notice of these monetary defaults. It is also undisputed that notice of operational defaults were given as follows: As to the 735 SW Topeka Boulevard store on May 5, 2009; as to the Wanamaker Road store on May 29, 2009; as to the Independence, MO store on August 17, 2009; as to all stores on November 4, 2009, for failure to comply with procedures for criminal background checks; and as to the three Kansas stores on May 5, 2009, with respect to accounting issues. The notices of termination dated November 20, 2009 reference section 18.2.1(l) as the basis for termination, identify the notices of default sent within the prior twelve months, state as to the Topeka stores that the terminations are effective on November 23, 2009, and state as to the Independence, Missouri store that termination is effective February 21, 2010. The Franchise

Agreements do not allow for cure of the termination; termination is immediate on the date specified. A similar default provision has been enforced by at least one other court.[13]

Debtor's arguments that the Franchise Agreements were not terminated are unavailing. First, Debtor admits the monetary defaults. These defaults alone are sufficient for immediate termination under section 18.2.1(l). As to the operational defaults, Debtor suggests that the defaults were not declared in good faith. But Debtor provides no facts from which the Court could find that there is an issue of Domino's good faith.

As to the termination under section 18.2.1(l), Debtor denies that the section can be enforced claiming that it is a provision of an adhesion contract. Debtor, without legal authority from Kansas or Missouri, argues that the Franchise Agreements should be reformed because "[franchise agreements are generally considered to be adhesion contracts because the parties are in unequal bargaining positions, and the provisions are highly favorable to the franchisor while offering the franchisees little protection."[14] Certainly this is an overly broad statement; it is not a rule of law that all franchise agreements are subject to reformation because they are adhesion contracts.

The Court rejects the theory that the Franchise Agreements are adhesion contracts as a basis to find that the agreements were not effectively terminated prepetition. First, Debtor has not fully developed its argument that the Franchise Agreements are so one-sided or unfair as to

---

[13] *Hacienda Mexican Restaurant of Kalamazoo Corp. v. Hacienda Franchise Group, Inc.,* 569 N.E.2d 661, 667 (Ind. App. 1991) (enforcing termination provision in franchise agreement allowing termination without opportunity to cure based upon three defaults in eighteen months).

[14] Doc. 68, p. 4.

13

render them unenforceable.[15]  The only unfairness alleged is that section 18.1 of the Franchise Agreements contains a 30 day cure period for defaults by the franchisor, but section 18.2.1(l), the section relied upon by Domino's in this case fails, to include a similar provision.  However, Debtor fails to acknowledge that section 18.2.1(l) applies only when there are three or more defaults within a twelve month period and that section 18.2.2., for some defaults by the franchisee, grants the franchisee the opportunity to cure before termination.  Consistent with the Franchise Agreements, when giving Debtor notices of default, Domino's informed Debtor of the applicable cure period.

Second, applicable law does not support Debtor's contention.  The Franchise Agreements provide that they "shall be interpreted in accordance with and governed by the laws of the State in which the Store is located," in this case Kansas with respect to three of the stores.  Under Kansas law, "[an adhesion contract is a standardized contract form offered to consumers of goods and services on essentially take it or leave it basis without affording consumer realistic opportunity to bargain and under such conditions that consumer cannot obtain desired product or services except by acquiescing in form contract."[16]  In this case the Franchise Agreements were not consumer transactions, and Debtor cannot prevail under Kansas law on the premise that the termination provisions of the Franchise Agreements are unenforceable adhesion contracts. Debtor has also provided no argument and no authorities that Missouri law of adhesion contracts supports its position.  Under Missouri law, negotiated contracts are contrasted with adhesion

---

[15] *See Wayman v. Amoco Oil Co.*, 923 F. Supp 1322, 1342 (D. Kan. 1996).

[16] *Ed Bozarth Chevrolet, Inc. v. Black*, 32 Kan. App.2d 874, 886-887, 96 P.3d 272, 279 (2003), *quoting Anderson v. Union Pacific R.R. Co.*, 14 Kan. App.2d 342, 346, 790 P.2d 438 (1990) (internal quotation marks omitted).

14

contracts, "which usually involve unequal bargaining power of a large corporation versus an individual and are often presented in pre-printed form contracts."[17]  In Missouri, adhesion contacts "are not inherently sinister and automatically unenforceable."[18]  The courts seek to enforce the reasonable expectations of the parties and find unenforceable only those provisions which are "unexpected and unconscionably unfair,"[19] under an objective standard.  Debtor makes no argument that the termination provisions of the Franchise Agreements is unenforceable under this standard.

For the foregoing reasons, the Court finds section 18.2.1(l) of the Franchise Agreements is an enforceable provision which was properly invoked and exercised.  The notices of termination were effective to terminate the Franchise Agreements for the Kansas stores as of November 23, 2009, before Debtor filed for relief on December 22, 2009.  Therefore, if Debtor had any right to operate the Domino's Pizza Stores in Topeka or to assign such right to a third party, that right would have to arise because of Domino's voluntary stay of enforcement of the terminations of the Kansas agreements.  As to the Kansas stores, there is question whether the stays of enforcement or the delay in effectiveness rise to the level of executory contracts which Debtor may assume or assign to another.  This is addressed in the next section of this opinion.

The November 20, 2009 notice of termination of the agreement for Missouri store also complied with the applicable Franchise Agreement.  However, since Debtor filed for relief before the stated termination date of February 21, 2010, which is after Debtor filed for

---

[17] *Swain v. Auto Services, Inc.*, 128 S.W.3d 103, 107 (Mo. App. E.D. 2003).

[18] *Id.*

[19] *Id.*

bankruptcy relief, the Court must determine if the Missouri franchise agreement may be assumed. This is also addressed below.

### 2. The delay in enforcement of the termination of the Franchise Agreements for the Kansas stores until December 23, 2009 or January 23, 2010 did not give rise to executory contracts which Debtor may assume or reject.

Although the Code does not define an executory contract, the generally accepted definition is that an executory contract is one on which performance remains materially unperformed on both sides.[20] A debtor may assume a contract under § 365 only when the contract is executory on the date of filing. A terminated contract is not executory; after termination substantial performance does not remain due on both sides.

As found above, the termination notices effectively terminated the Franchise Agreements prepetition. Based upon the terminations, the Franchise Agreements were not executory contracts on the day of filing and cannot be assumed by the Debtor. However, in the termination letters as to the Topeka stores, Domino's agreed "to stay legal proceedings to enforce the termination until December 23, 2009" and provided that during the stay the stores "must be operated in accordance with the terms and conditions of the Franchise Agreement." Debtor filed for relief on December 22, 2009, before this stay expired. After the filing, Domino's gave notice that the stay of enforcement was extended on the same conditions until January 23, 2010. Thus on the date of filing, Debtor had the right to continue operation of the Domino's Pizza Stores in accord with the Franchise Agreements.[21]

_____

[20] *See* 3 *Collier on Bankruptcy* ¶ 365.02[1] (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. rev. 2009).

[21] Although in this case, Debtor has not alleged that the agreement to stay gave rise to a new executory contract, this argument was asserted by a Domino's franchisee in *In re Making the Dough, Inc.*,

16

Even if the stay of enforcement coupled with Debtor's operation of the Topeka stores under the terms of the Franchise Agreements somehow reinstated the Franchise Agreements or otherwise gave rise to an executory contract, the Court finds that this circumstance does not result in an executory contract which Debtor may assume or reject.  There is no question that a contract that terminated completely prior to filing cannot be assumed.  The same rule applies to a contract that expires by its own terms solely due to the passage of time after the bankruptcy is filed.  "If the franchise agreement expires by its own terms or by the mere passage of time after a debtor commences its bankruptcy case, the Bankruptcy Code does not somehow preserve the expired agreement."[22]

This principle is illustrated by *Moody v. Amoco Oil*.[23]  In *Moody,* the franchisor gave debtor notice of termination prepetition, but the termination was not effective for 90 days after the notice.  During the 90 day period, the franchisee filed for bankruptcy relief.  It argued that because the bankruptcy was filed before the 90 days expired, the contracts were still executory on the date of filing and could be assumed under § 365.  The Court disagreed.  It noted that there is no right to assume a contract that is completely terminated without right to cure before filing,

---

2009 WL 975170 (Bankr. M.D. Pa. 2009) under facts substantially identical to this case. The franchisee debtor brought an adversary proceeding for a declaration that the franchise agreements were still in place and sought a preliminary injunction to bar termination. Domino's opposed the motion alleging that the franchise agreements had been terminated prepetition. The court rejected the argument that Domino's prepetition agreement to stay enforcement of the termination created a new contract, finding the elements of a novation were not present.  The Court finds that it need not consider the novation issue since it was not raised by Debtor.  Further, if there was a new contract, for the reasons stated elsewhere in this opinion, the new contract expired post-petition by the passage of time and provides no basis for finding that Debtor has rights in the Franchise Agreements or that the stay should not be lifted.

[22] 6 Norton Bankr. L.& Pac. 3d ¶ 121:3

[23] *Moody v. Amoco Oil Co.*, 734 F.2d at 1200.

17

and the fact that the termination itself is not effective for 90 days does not affect the result. The

court stated:

> As discussed above, here the dealership termination notices were effective prior to debtors' filing in bankruptcy. The contract gave debtors no right to cure once the termination notices were mailed. Amoco did not have to take any further action to terminate the contracts; termination was automatic at the end of ninety days. Wisconsin law also gives debtors no right to cure.
>
> The fact that the termination itself was not effective for ninety days does not affect the result. The filing of the chapter 11 petition cannot expand debtors' rights as against Amoco. When the termination notice was sent, debtors only had a right to ninety days' worth of dealership contracts. The filing of the petition does not expand that right. . . .
>
> Similarly, section 541(a) provides that a debtor's estate consists of "all legal or equitable interests of the debtor in property as of the commencement of a case." Thus, whatever rights a debtor has in property at the commencement of the case continue in bankruptcy-no more, no less. Section 541 "is not intended to expand the debtor's rights against others more than they exist at the commencement of the case."
>
> Section 362, which creates an automatic stay of certain creditor actions upon the filing of a petition in the bankruptcy court, does not help debtors here. The automatic stay does not toll the mere running of time under a contract, and thus it does not prevent automatic termination of the contract. Section 362 does not give a debtor greater rights in a contract. Thus, debtors cannot rely on section 362 to prevent termination of the contracts.[24]

The *Moody* court relied in part on a Tenth Circuit case, *Trigg*,[25] which held that when a lease was

automatically terminated for failure to pay annual delay rental payments, the bankruptcy court

could not exercise its equity powers to order leases reinstated.

---

[24] *Id.*, 734 F.2d at 1212-13 (citations omitted).

[25] *Trigg v. United States, Department of the Interior (In re Trigg),* 630 F.2d 1370 (10th Cir. 1980).

The Tenth Circuit Bankruptcy Appellate Panel in *C.W. Mining*[26] recently discussed *Moody* and *Trigg*. In *C.W. Mining*, the Chapter 7 trustee moved for an extension of time in which to assume or reject debtor's coal mining lease with COP. Prepetition COP gave notice of default and stated that the lease would be cancelled unless the default was cured prior to the end of a 60-day notice period, which expired on January 8, 2008. The petition for relief was on January 8, 2008, before the close of business and the default was not cured. The debtor opposed the trustee's motion for extension of the time to assume or reject on several theories, including the contention that the lease was no longer executory because it had automatically terminated post-petition. The bankruptcy court rejected this theory because the lease did not provide for *automatic* termination if there was no cure with the 60-day period; it only provided that the lessor *may* terminate in the absence of cure. The BAP affirmed. It stated, "COP is correct that as a general rule, the automatic stay does not prevent the automatic termination of a contract."[27] It noted that *Trigg* and *Moody*, in which post-petition termination was found, were cases where the

> contract in question explicitly provided for automatic termination upon default. No action by the non-debtor party was required to terminate the contract, only the passage of time. Further, neither contract provided the debtor an opportunity to cure and none of the debtors had a pending right to cure on their respective petition dates. As noted by the Seventh Circuit, 'the termination must be complete and not subject to reversal, either under the terms of the contract or under state law.'" [28]

---

[26] *C.O.P. Coal Devel. Co. v. C.W. Mining Co. (In re C.W. Mining Co.)*, 422 B.R. 746 (10th Cir. BAP 2010).

[27] *Id.*, 422 B.R. at 755.

[28] *Id.*, quoting *Amoco Oil v. Moody*, 734 F.2d at 1212.

If Debtor had any rights under the Franchise Agreements as of the date of filing, this case fits the *Trigg* and *Moody* narrow rule of post-petition expiration of those rights. In this case, the Franchise Agreements provided for immediate termination upon the notice of termination without a right to cure. In the termination letters, Domino's stated that the termination date was November 23, 2009, but stated that it would stay enforcement of the termination until December 23, 2009 for the sole purpose of allowing Debtor to find a purchaser. Debtor filed for relief on December 22, 2009 before the end of the first stay and on December 23, 2009 Domino's extended the stay until January 23, 2010. Domino's did not find a purchaser. The stay expired by the mere passage of time during the bankruptcy without Domino's being required to take any action.[29] Debtor has no rights under the Franchise Agreements which can be assumed under § 365.

The Debtor's reliance on Domino's stay of the enforcement of the termination as evidencing a waiver of the terminations is rejected. Debtor argues that Domino's waived the termination of the Franchise Agreements by accepting royalty payments from Debtor after the termination date. A waiver requires the intentional relinquishment of a known right.[30] The notices of termination, while stating that the terminations were effective on November 23, 2009, also stated that Domino's agreed to stay legal proceedings to enforce the termination until December 23, 2009, to afford debtor an opportunity to sell the stores. The stay of the right to enforce the terminations includes a provision that "[d]uring the stay, the Store must be operated in accordance with the terms and conditions of the Franchise Agreement." It is the stay of

---

[29] Debtor's argument that Domino's violated the stay of § 362 by terminating the Franchise Agreements is therefore rejected.

[30] *Foundation Prop. Inv., LLC v. CTP, LLC*, 286 Kan. 597, 597, 186 P.3d 766, 768 (2008).

20

enforcement that gives rise to the obligation to pay royalties. Domino's acceptance of royalties was therefore consistent with the termination and did not constitute a waiver the termination.

The Court therefore concludes that Debtor may not assume the Franchise Agreements for the Topeka stores because they are terminated.

**C.  The delay in the enforcement of the termination of the Franchise Agreement for the Independence, Missouri store until February 21, 2010 does not give rise to an executory contact which Debtor may assume or reject.**

Unlike Kansas, Missouri has enacted a franchise law which impacts this case. Under Missouri law,

> No person who has granted a franchise to another person shall cancel or otherwise terminate any such franchise agreement without notifying such person of the cancellation, termination or failure to renew in writing at least ninety days in advance of the cancellation, termination or failure to renew, except that when criminal misconduct, fraud, abandonment, bankruptcy or insolvency of the franchisee, or the giving of a no account or insufficient funds check is the basis or grounds for cancellation or termination, the ninety days' notice shall not be required.[31]

Remedies for failure to give the required notice are addressed by statute as follows:

> A franchisee suffering damage as a result of the failure to give notice as required of the cancellation or termination of a franchise, may institute legal proceedings under the provisions of sections 407.400 to 407.420 against the franchisor who canceled or terminated his franchise in the circuit court for the circuit in which the franchisor or his agent resides or can be located. When the franchisee prevails in any such action in the circuit court, he may be awarded a recovery of damages sustained to include loss of goodwill, costs of suit, and any equitable relief that the court deems proper.[32]

---

[31] V.A.M.S. 407.405

[32] V.A.M.S. 407.410.2

21

The equitable relief available may include the imposition of a full ninety day notice period and in an appropriate case, injunctive relieve.[33]  A commentator states:

> Under the Missouri Franchise Act, the franchisor must continue to do business with the franchisee during the ninety-day notice period.  Refusal to deal in good faith or failure to deal during this period exposes a franchisor to liability under the Act and at common law under various theories, including tortious interference with the franchisee's relationships with its customers and improper constructive termination without notice.[34]

Because of this statute, Domino's notice of termination as to the Missouri store provided that the termination would be effective on February 21, 2010, 93 days after November 20, 2009, the date of the notice of termination.  It is Domino's position that this extension of the Franchise Agreement is subject to the rule of *Moody* and *Trigg*, examined above as to the effect of the stays of enforcement of the Kansas franchises.  Under this law, since the Missouri Franchise Agreement terminated on February 21, 2010 because of the passage of time, there is no executory contract that may be assumed or rejected.  Debtor responds that termination was not done in accord with the Missouri Act.

The Court finds Domino's position correct.  The termination notice for the Missouri store states that the termination is effective on February 21, 2010.  Neither the Franchise Agreement nor the Missouri Act gave Debtor a right to cure during the 90 day period. Neither the Franchise Agreement nor the Missouri Franchise Act imposed any further action, such as giving additional notice, on Domino's termination for cause.  When the 90 day period expired, the Franchise

---

[33] *See Maude v. General Motors Corp.*, 626 F. Supp. 1081 (D.W.D. Mo. 1986).

[34] Palmer, *Franchises: Statutory and Common Law Causes of Action in Missouri Revisited*, 62 U. Mo. K.C. L. Rev. 471, 496 (1994).

Agreement was terminated. There is not an executory franchise agreement for the Missouri store which Debtor may assume or reject.

In response to this argument, Debtor does not provide any authorities challenging *Moody*, *Trigg*, and similar authorities relied upon by Domino's. Rather, Debtor cites the Missouri statute, quoted above, which authorizes recovery of damages if a franchise is terminated without 90 days notice[35] and cases where damages were awarded because notice was not given. Debtor states:

> . . . Domino's has frustrated Debtor's business during the ninety (90) day termination notice period, as evidenced by their adversarial correspondence with Debtor as well as their complete failure - and this breach of the Franchise Agreement - to fulfill their obligation to provide "Operating Assistance" required by Section 11.1 and 11.2, and Domino's has thus failed to act in good faith during said period.[36]

Although Debtor's statements would appear to raise the question whether the 90 day notice provided the Debtor the post-notice performance time contemplated by the statute, Debtor has provided absolutely no evidence, even by way of affidavit or exhibit, in support of its allegations. As stated above, Debtor has the burden of proof. Domino's prima facie case showing the Franchise Agreement for the Missouri store has expired prevails.

Debtor may be arguing that Domino's continued receipt of royalties from the operation of the Missouri store constituted a waiver of the termination, just as it argued that the acceptance of royalties from the Kansas stores after termination waived termination of the Kansas franchises. If this is Debtor's position, it is rejected for the same reasons as the defense was rejected as to the Kansas stores. In Missouri, as in Kansas, waiver is the intentional

---

[35] V.A.M.S. 407.405.

[36] Doc. 68, p. 7.

relinquishment of a known right.[37]  Domino's allowed Debtor to operate the Missouri store after the notice of termination because the Missouri Franchise Act required it to do so.  Domino's expressly stated in the notice of termination that it intended to "take all action it deems necessary to enforce its rights under the Franchise Agreement and expressly reserves the right to pursue any and all remedies available to it under the Franchise Agreement or state law."  Domino's preserved its right to terminate the franchise.  It did not intentionally waive that right.

**D.  Cause exists to grant relief from stay to enforce non-monetary post-termination obligations.**

Since the date of filing and after the expiration of the stay of enforcement of the terminations as to the Kansas stores and the expiration of the 90 day notice applicable to the Missouri store, Debtor has continued to operate its pizza stores under the Domino's trade name and in accord with the operations stated in the Franchise Agreements.  Yet, as found above, Debtor has no contractual right to continue to operate using the Domino's mark and the Bankruptcy Code provides no basis for reinstatement of such right.

The termination duties which Domino's seeks to enforce have the purpose of protecting the Domino's mark and preventing the unauthorized use of that mark.  As stated above, they are set forth in section 18.3 of the Franchise Agreements and include returning the operating manual; cancelling all use of Domino's trademark; notifying third parties, such as telephone companies and the postal service, of the termination; ceasing to identify itself as a Domino's Pizza Store; if the ownership of the store is maintained, making modifications to the interior and exterior to fully eliminate its identification as a Domino's store; and making the store accessible

---

[37] *Richardson v. Richardson*, 218 S.W.3d 426, 430 (Mo. 2007).

and available to Domino's if it elects to operate the store. Since Debtor cannot assume the Franchise Agreements and therefore also cannot assign them to a third party, Debtor has no right to their use of the Domino's mark and related interests. Debtor has suggested no basis for adequate protection of Domino's interests, and the Court knows of none which would be appropriate under the circumstances.

Debtor responds that even if there is cause for relief from stay, the Court should issue a restraining order to protect Debtor's estate. The rationale for this relief appears to be that Debtor's ability to reorganize is contingent upon its assumption of the Franchise Agreements and the alleged probability of a successful reorganization if the Franchise Agreements are assumed. The Court rejects these arguments. They would be relevant in support of a motion to assume the Franchise Agreements, if they were executory. But Court has concluded that the contracts are not executory and there is no contract for Debtor to assume or reject. The Court is bound to apply the Code as to when relief from stay should be granted, and in this case relief is appropriate. Debtor has not fulfilled its burden of proof to show lack of cause and the presence of adequate protection.

Accordingly, the Court finds cause to grant relief from stay for Domino's to enforce the non-monetary termination agreements of the three Kansas and one Missouri Franchise Agreement. Relief is not granted, however, as to any monetary defaults, whether post-petition or prepetition, as the right to payment may be asserted against the Debtor in the bankruptcy proceeding.

**E.  The Court rejects Debtor's "defense" that stay relief should not be granted because Domino's has breached the Franchise Agreements.**

Case 09-24232    Doc# 90    Filed 04/09/10    Page 25 of 28

Finally, the Court rejects Debtor's "defense" that relief from stay should not be granted because Domino's breached the Franchise Agreements prepetition. This position is based upon several allegations, including: (1) That Domino's failed to fully inform Debtor regarding the nature of Debtor's proposed investment prior to the execution of the Franchise Agreements, as required by the Federal Trade Commission Act, 15 U.S.C §§41-77;[38] (2) that the difficulties that led to the bankruptcy filing "were in no small part due to the nonexistent 'operational assistance' from Domino's;"[39] (3) that Domino's was unable to provide Debtor with quality products;[40] and (4) that subsequent to the notice of termination Domino's has substantially changed its marketing strategy and product ingredients.[41] The only "evidence" supporting these allegations are copies of two post-petition news articles regarding changes at Domino's.

Debtor has not made out a prima facie case of breach of contract. Debtor has not provided any authority that such allegations, if true, would have any bearing on Domino's entitlement to relief from stay. Breaches of contract generally give rise to a right of action for monetary damages. The Court finds them not relevant to relief from stay and does not consider the merits of the allegations.

**F. The Court holds that Domino's argument that relief from stay should be granted because the Franchise Agreements cannot be assumed under § 365(c)(1) is moot.**

As an alternative to its argument that relief from stay should be granted for cause, Domino's asserts that in any event, even if the Franchise Agreements are not terminated, relief

---

[38] Doc. 68, p. 11.

[39] Doc. 68, p. 14.

[40] *Id.*

[41] Doc. 68, pp. 14-15.

Case 09-24232    Doc# 90    Filed 04/09/10    Page 26 of 28

should be granted because the Franchise Agreements are excepted from those contracts which can be assumed by § 365(c)(1). In light of the Court's conclusion that the Franchise Agreements are terminated and therefore cannot be assumed and that there is cause for relief from stay, the Court finds this alternative theory moot and will not address its merits.

**CONCLUSION.**

The Court therefore finds that as of the date of filing the Franchise Agreements for the Kansas stores, located at 2940 SW Wanamaker Road, Suite 180, Topeka, KS 66614; 735 SW Topeka Blvd., Topeka, KS 66603; and 2835 SE California Ave., Topeka, KS 66605, were not executory contracts for purposes of § 365 since they had been terminated. The Court further finds to the extent that Domino's stay of legal proceedings to enforce the terminations as to the Kansas stores gave rise to executory contracts, those contracts expired by the passage of time after Debtor filed for relief. Likewise, the Missouri Franchise Agreement, for a store located at 1208 W. US Highway 24, Independence, MO 64050, has terminated by the passage of time. After the expiration of the extensions of the enforcement of the terminations, Debtor is no longer a party to any executory Franchise Agreements with Domino's and may not assume the Franchise Agreements. Cause therefore exists for Domino's to be granted relief from stay. Post-petition Debtor's has continued to operate the Domino's stores and use Domino's marks without authority from Domino's, and Domino's interests are not adequately protected. Relief from stay is therefore granted for Domino's to enforce the non-monetary post termination provisions of the Franchise Agreements for the stores at the addresses listed above. Pursuant to Federal Rule of Bankruptcy Procedure 401(a), this order granting relief from stay is stayed until the expiration of 14 days after entry.

27

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

###